VALSPAR CORPORATION, a Delaware
corporation, Petitioner, Appellant,

v.

LUKKEN COLOR CORPORATION,
a Delaware corporation,
Respondent.

No. C0–91–1015.

Supreme Court of Minnesota.

Dec. 24, 1992.

Rehearing Denied March 2, 1993.

Kent G. Harbison, Richard D. Snyder, Fredrikson & Byron, P.A., Minneapolis, for petitioner, appellant.

Edward J. Pluimer, Dorsey & Whitney, Minneapolis, and John Timbers, Stamford, CT, for respondent.

TOMLJANOVICH, Justice.

We are asked to decide the reach of the Minnesota long-arm statute, Minn.Stat. § 543.19 (1990). Specifically, we must decide whether Minn.Stat. § 543.19, subd. 3 curtails the power of Minnesota courts to exercise personal jurisdiction over nonresident defendants to a greater extent than the restrictions placed on its exercise by the Due Process Clause of the United States Constitution. We hold that it does not.

Appellant Valspar Corporation ("Valspar") is a Delaware corporation with its headquarters in Minneapolis. It manufactures paint and other coating and staining products. Respondent Lukken Color Corporation ("Lukken") is a Delaware corporation with its principal place of business in Greenwich, Connecticut.

In September 1988, Lukken approached the McCloskey Corporation ("McCloskey") in hopes that McCloskey could be persuaded to license its water-based wood stain formula. McCloskey is a Pennsylvania corporation with headquarters in Philadelphia; it sells paints, stains and other products. McCloskey expressed interest in marketing Lukken's formula. Lukken agreed to disclose the formula to McCloskey if McCloskey signed a confidentiality agreement in which it promised it would not use the information Lukken disclosed to it for any reason other than technical or marketing evaluation. This confidentiality agreement had a five year term. In November 1988, Lukken and McCloskey entered into an option agreement that incorporated the prior confidentiality agreement. For purposes of this opinion, we refer to this agreement incorporating the prior confidentiality agreement as the "McCloskey–Lukken agreement." This agreement contained a clause requiring that any disputes pursuant to it be arbitrated in Connecticut.

In January 1989, McCloskey informed Lukken that the negotiations regarding licensure of the woodstaining formula would have to stop because Valspar might be purchasing McCloskey. In addition, McCloskey told Lukken that it had already disclosed some of Lukken's confidential information to Valspar as a potential asset.

Lukken quickly wrote Valspar's St. Paul headquarters to inquire if Valspar might be interested in licensing Lukken's woodstaining formula. Along with the letter, Lukken sent a confidentiality agreement for Valspar's signature. Valspar eventually did sign a confidentiality agreement with Lukken, but not until August 1989 (the "Valspar–Lukken agreement"). The signed agreement is similar to the McCloskey–Lukken agreement; a notable difference is that, unlike the McCloskey–Lukken agreement, it does not contain an arbitration clause.

In the summer of 1989, Valspar purchased McCloskey's assets as contemplated. In July 1989, Lukken representatives traveled to Minneapolis to present Lukken's formula and licensing proposal to Valspar officials. After the sales presentation, Valspar executives informed the Lukken representatives that Valspar was no longer interested in licensing the formula.

In 1990, Valspar began marketing a new line of water-based stains. Lukken contacted Valspar, claiming that the new line was based on Lukken's confidential formula. Lukken threatened to sue Valspar, unless Valspar agreed to pay Lukken for the use of the formula. In response to the threat of litigation, Valspar brought these declaratory judgment actions, asking the

trial court to declare that Valspar had neither misappropriated Lukken's formula nor breached the McCloskey–Lukken or Valspar–Lukken agreements.

Lukken mounted a two-pronged defense. It demanded that the matter be arbitrated in Connecticut, pursuant to the provision in the McCloskey–Lukken agreement, requesting both injunctive relief and damages against Valspar. Lukken also brought a motion pursuant to Rule 12.02(b) of the Minnesota Rules of Civil Procedure requesting that both declaratory judgment actions be dismissed for lack of personal jurisdiction. In the alternative, Lukken asked the court to issue an order compelling the Connecticut arbitration.

The trial court denied Lukken's motion to dismiss Valspar's declaratory judgment action regarding Valspar–Lukken agreement. It reasoned that, in negotiating the agreement, Lukken officials had contacted Valspar's headquarters in Minnesota. Later, Lukken officials had traveled to Minnesota in order to promote Lukken's woodstaining formula to Valspar officials. The court ruled that these contacts provided an adequate basis for personal jurisdiction over Lukken for purposes of the declaratory judgment action on the Valspar–Lukken agreement.

However, the trial court dismissed Valspar's declaratory judgment action on the Lukken–McCloskey agreement, ruling that Minnesota did not have personal jurisdiction over Lukken for purposes of this agreement. It reasoned that when the contract was formed neither McCloskey nor Lukken had any contacts with Minnesota. Thus no contacts tied the contract to Minnesota or provided a basis for a Minnesota court to adjudicate the parties' rights pursuant to it.

The court also ruled that the Valspar–Lukken agreement had not been breached as a matter of law, construing statements of Lukken's attorneys as concessions that Valspar had not breached it. Finally, instead of ordering that the arbitration proceed in Connecticut as Lukken had requested, the trial judge permanently stayed it.

Both parties appealed. The court of appeals, in an unpublished decision, affirmed with one exception. It ruled that the trial court did not have jurisdiction to stay the arbitration because it had dismissed the declaratory judgment action on the McCloskey–Lukken agreement which contained the compulsory arbitration clause. Valspar appealed to this court.

## I.

Minnesota Statute § 543.19 sets forth when Minnesota courts may take jurisdiction over nonresident defendants. The relevant provisions read:

Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation * * * in the same manner as if it were a domestic corporation * * *. This section applies if * * * through an agent, the foreign corporation * * *:

\* \* \* \* \* \*

(b) Transacts any business within the state * * *.

\* \* \* \* \* \*

Subd. 3. Only causes of action arising from acts enumerated in subdivision 1 may be asserted against a defendant in an action in which jurisdiction over the defendant is based upon this section.

This court has repeatedly held that the legislature designed the long-arm statute to extend the personal jurisdiction of Minnesota courts as far as the Due Process Clause of the federal constitution allows. *See, e.g., Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290 (Minn.1978); *Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 240 N.W.2d 814 (1976).

The court of appeals, however, has interpreted Minn.Stat. § 543.19, subd. 3, as a specific jurisdiction requirement, thus requiring that each claim in a lawsuit have its own ties to Minnesota to provide a basis for personal jurisdiction. *Rykoff–Sexton, Inc.*

*v. American Appraisal Assocs.*, 460 N.W.2d 78, 81 (Minn.App.1990) (*rev'd on other grounds* 469 N.W.2d 88 (Minn.1991)); *Busch v. Mann*, 397 N.W.2d 391, 394 (Minn.App.1986); *Hanson v. John Blue Co.*, 389 N.W.2d 523, 527–28 (Minn.App. 1986) *pet. for rev. denied*, (Minn. Aug. 13, 1986); *Waite v. Waite*, 367 N.W.2d 679 (Minn.App.1985). Under this type of analysis, in some cases exercise of personal jurisdiction would be constitutional but forbidden by the statute.

■ Today we reaffirm our earlier holdings. Subdivision 3 of the long-arm statute does not place barriers to Minnesota long-arm jurisdiction in addition to those placed on its exercise by the Due Process Clause. If the personal jurisdiction requirements of the federal constitution are met, the requirements of the long-arm statute will necessarily be met also. Thus, when analyzing most personal jurisdiction questions, Minnesota courts may simply apply the federal case law.

## II.

The polestar of modern personal jurisdiction analysis is *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *International Shoe*, the Supreme Court held that state courts may constitutionally exercise personal jurisdiction over nonresident defendants who have "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158 (citations omitted).

■ Furthermore, constitutional law distinguishes between "general" and "specific" personal jurisdiction cases. In a general jurisdiction case, a defendant conducts so much business within a state that it becomes subject to the jurisdiction of that state's courts for any purpose. In a specific jurisdiction case, the defendant has few contacts with the forum state: in these cases involving truly minimal contact, the Due Process Clause requires that the case arise out of or be related to the contacts with the forum. *Helicopteros Nacionales*

*de Columbia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

Lukken has not challenged the lower court's rulings that Minnesota has the power to hail Lukken into its courts in order to adjudicate the parties rights under the Valspar–Lukken agreement. Thus this ruling is the law of the case, and Minnesota courts have jurisdiction over that claim.

■ We believe that the declaratory judgment action on the McCloskey–Lukken agreement is clearly related to the Lukken's contacts with the forum regarding the Valspar–Lukken agreement and thus there is a constitutional basis for the exercise of personal jurisdiction within the meaning of *Helicopteros.* The two agreements concern the same woodstaining formula and the same confidential information. The agreements are now between the same parties because when Valspar brought the declaratory judgment actions, Valspar had purchased Lukken's assets. Further, Lukken acknowledged that Valspar had stepped into McCloskey's shoes for purposes of the McCloskey–Lukken agreements when Lukken threatened to sue Valspar pursuant to the McCloskey–Lukken agreement. It further appears from the record that the reason Lukken entered into the negotiations and then the contract with Valspar was because McCloskey notified Lukken that Valspar might purchase McCloskey. By continuing the McCloskey negotiations with Valspar and sending its executives to Minnesota to market Lukken's wares, Lukken subjected itself to the jurisdiction of the Minnesota courts, not only as to the Valspar–Lukken agreement, but for purposes of the McCloskey–Lukken agreement as well. Because these contracts are now so intimately related, Minnesota courts have jurisdiction over the parties as to both of them.

## III.

■ Lukken further argues that personal jurisdiction is a discretionary doctrine and even if a trial court has personal jurisdiction, it may, in its discretion, refuse to exercise it. This is not Minnesota law. To the contrary, this court has emphasized

that in a close case, doubts should be resolved in favor of retention of jurisdiction. *Hardrives*, 307 Minn. at 296, 240 N.W.2d at 818. This is not the rare case in which a trial court might legitimately refuse to hear a case although constitutional requirements have been met.[1]

The trial court has personal jurisdiction over Lukken for purposes of Valspar's declaratory judgment action on the Lukken–McCloskey agreement. We remand to the trial court for further proceedings consistent with this opinion.

Reversed.

---

1. The court of appeals also held that because the trial court did not have personal jurisdiction over Lukken for purposes of the Lukken–McCloskey agreement, which contained the arbitration clause, it improperly stayed the Connecticut arbitration. Because we hold the trial

court has jurisdiction over Lukken for purposes of the Lukken–McCloskey agreement, we reverse the court of appeals on this point also but do not express an opinion as to whether the stay was proper in the first instance.