534 N.W.2d 719 (1995)
Jack JENSON, a Trustee for the Heirs and Next-of-Kin of Jessica Jenson, Respondent,
v.
R.L.K. & CO., d/b/a Timberline Lodge, an Oregon Corporation, Appellant,
Afton Advantage, Inc., d/b/a Afton Advantage Sports Camp, Lindsey Ahlstrom, Respondents.
No. C7-95-209.
Court of Appeals of Minnesota.
July 25, 1995.
Review Denied September 20, 1995.
*721 J. Michael Dady, Ronald K. Gardner, J. Michael Dady & Associates, P.A., Minneapolis, for Jack Jenson.
Brian N. Johnson, Sheila T. Kerwin, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for R.L.K. & Co.
Thomas E. Marshall, Mackall, Crounse & Moore, Minneapolis, for Afton Advantage Inc.
Kenneth W. Dodge, Meagher & Geer, Minneapolis, for Lindsey Ahlstrom.
Considered and decided by LANSING, P.J., and KALITOWSKI and PETERSON, JJ.

OPINION
KALITOWSKI, Judge.
R.L.K. & Co., d/b/a/ Timberline Lodge (Timberline) appeals the order denying its motion to dismiss for lack of personal jurisdiction.

FACTS
R.L.K. & Co. is an Oregon corporation that owns and operates the Timberline Lodge on Mt. Hood in Oregon. Timberline's principal place of business is in Oregon. Timberline maintains no business office in Minnesota, does not own any real or personal property within Minnesota, does not have an agent to accept service of process within Minnesota, and has no Minnesota residents serving as officers or employees. Timberline does, however, advertise in national magazines which make their way into Minnesota. Afton Advantage, Inc. (Afton) is a Minnesota corporation that runs ski racing training camps for children and teenagers.
In 1991, Afton contacted Timberline to inquire about its summer skiing opportunities. Timberline sent Afton a brochure outlining its registration requirements and available summer sessions. These contacts were either by mail or by telephone. According to the registration requirements, Afton had to obtain: (1) a $1 million liability policy naming R.L.K. & Co. and Timberline as named additional insureds; (2) a liability and release agreement for each racer; and (3) a $150 deposit.
In addition to Afton, Timberline had contact with Minnesota through its relationship with another ski racing camp, Erich Sailer Ski Racing Camp (Sailer). Timberline and Sailer began their business relationship in 1992. Sailer followed the same registration requirements as set forth above. Sailer also held ski race camps at Timberline in 1993 and 1994.[1]
In 1992, Afton contacted Timberline and again decided to hold its summer ski camp at that location. Afton recruited the racers, one of whom was Jessica Jenson, a 17-year-old Minnesota resident. Afton obtained the required insurance policy in Minnesota and the required deposit and mailed them to Timberline. Afton also included a liability and release agreement, which each racer was required to sign.
Camp was held from June 25 through July 10, 1992. On July 2, Jessica Jenson was practicing turns across the lower portion of the mountain when Lindsey Ahlstrom, another Minnesota resident, ran into her causing her to be thrown into some rocks. Jenson lapsed into a coma and died.
Jack Jenson, Jessica's father, sued Timberline, Afton, and Ahlstrom in Minnesota. Timberline moved for summary judgment arguing that the district court lacked personal jurisdiction. The court denied the motion, and Timberline appeals.

*722 ISSUE
Is the exercise of personal jurisdiction over Timberline by the State of Minnesota proper?

ANALYSIS
An order denying a motion to dismiss for lack of personal jurisdiction is appealable as a matter of right. Stanek v. A.P.I., Inc., 474 N.W.2d 829, 831 (Minn.App. 1991), pet. for rev. denied (Minn. Oct. 31, 1991), cert. denied, 503 U.S. 977, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992). Whether personal jurisdiction exists is a question of law, which this court reviews de novo. Id. at 832.
A court may exercise personal jurisdiction over a nonresident defendant if: (1) the requirements of the long-arm statute, Minn.Stat. § 543.19 (1994), are met;[2] and (2) there are sufficient minimum contacts to satisfy constitutional due process requirements. Id. Minnesota's long-arm statute is coextensive with the constitutional limits of due process. Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 410 (Minn.1992). In other words:
If the personal jurisdiction requirements of the federal constitution are met, the requirements of the long-arm statute will necessarily be met also. Thus, * * * Minnesota courts may simply apply the federal case law.
Id. at 411.
Under the Due Process Clause, jurisdiction over a nonresident defendant is proper only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In making this determination, the court focuses on "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). A nonresident defendant's conduct and connections with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
There are two types of jurisdiction: general and specific. Helicopteros Nacionales v. Hall, 466 U.S. 408, 414 nn. 8-9, 104 S.Ct. 1868, 1872 nn. 8-9, 80 L.Ed.2d 404 (1984); Valspar, 495 N.W.2d at 411. General jurisdiction exists when a defendant has "continuous and systematic" contacts with the forum state. Helicopteros Nacionales, 466 U.S. at 415-16, 104 S.Ct. at 1872-73. For purposes of specific jurisdiction, a single contact with the forum state may give rise to jurisdiction if the cause of action arose out of the contact. See McGee v. International Life Ins., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (insurance contract with nonresident insurer); Marquette Nat'l Bank v. Norris, 270 N.W.2d 290, 295 (Minn.1978) (bank renewed loans to nonresident obligors).
Minnesota uses the following factors to determine if the exercise of personal jurisdiction is proper: (1) the quantity of contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action to the contacts; and the less significant factors of (4) Minnesota's interest in providing a forum for its residents; and (5) the convenience of the parties. Hardrives, *723 Inc. v. City of LaCrosse, 307 Minn. 290, 294, 240 N.W.2d 814, 817 (1976).
(1) Quantity of Contacts. Timberline contends that mailing five brochures to Minnesota and advertising in magazines that made their way into Minnesota were not systematic and continuous contacts with Minnesota that would render general jurisdiction proper. It also argues that requiring deposits and releases does not give rise to jurisdiction. We agree.
Cases in which general jurisdiction has been found have consisted of more numerous contacts than those presented here. See, e.g., Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 448, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952) (holding Ohio courts properly exerted jurisdiction over Philippine mining company where company set up office, kept files, carried out correspondence, drew and distributed salary checks, and maintained bank accounts in Ohio); Hardrives, 307 Minn. at 295, 240 N.W.2d at 817 (exercise of general jurisdiction proper where nonresident defendant held negotiations, inspections, and planning sessions in Minnesota).
Timberline did not specifically solicit business in Minnesota; it did not have an office in Minnesota; and its employees did not travel to Minnesota. The few telephone calls, exchange of correspondence, and release requirements are not systematic and continuous contacts that would give rise to jurisdiction. See Camelback Ski Corp. v. Behning, 312 Md. 330, 539 A.2d 1107, 1108, 1113 (1988) (mailing five to six brochures per year to forum state did not satisfy due process), cert. denied, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988); Morris v. Barkbuster, Inc., 923 F.2d 1277, 1279, 1281 (8th Cir.1991) (exercise of general jurisdiction improper where nonresident defendants' only contacts with Minnesota consisted of selling a product line to a Minnesota corporation and entering into consulting agreement).
(2) Nature and Quality of the Contacts. In reviewing the nature and quality of the contacts, the court attempts to determine whether the nonresidents "purposefully availed" themselves of the protections and benefits of Minnesota law. Dent-Air, Inc. v. Beech Mountain Air Serv., 332 N.W.2d 904, 907 (Minn.1983); see also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958) (minimum contacts exist where defendant has purposefully availed itself of privilege of conducting activities with forum state).
When a nonresident's contacts are directed at attaining a commercial benefit within Minnesota jurisdiction may be proper. See, e.g., Kopperud v. Agers, 312 N.W.2d 443, 445 (Minn.1981) (foreign defendant's contacts involving scheme to defraud Minnesota investor's and knowledge that Minnesota investors were in fact being solicited for scheme gave rise to jurisdiction); First Heartland Sur. & Casualty Ins. v. Meyer, 468 N.W.2d 563, 565 (Minn.App.1991) (North Dakota insurer's solicitations directed at Minnesota business constituted deliberate economic activity within state satisfying due process). Here, Timberline did not solicit business from Minnesota, but simply opened its doors to the general public for business.
Other jurisdictions have determined that a hotel or resort's contacts consisting of general advertisements, phone calls, reservations, and deposits are not sufficient to confer jurisdiction. See Scheidt v. Young, 389 F.2d 58, 60 (3d Cir.1968) (advertisements in out-of-state newspaper, telephone conversations to resident of forum state, receipt of deposit sent from resident of forum state did not constitute acts by which defendant purposefully availed itself of privilege of conducting business within forum state); Slocum v. Sandestin Beach Resort Hotel, 679 F.Supp. 899, 901 (E.D.Ark.1988) (where Arkansas resident fell in tub while in Florida hotel and sued, hotel's solicitation of business in Arkansas not sufficient to confer jurisdiction where injuries sustained were antecedent to contacts); Braasch v. Vail Assocs., 370 F.Supp. 809, 814 (N.D.Ill.1973) (mere payment of money, shipment of goods into, or advertisement in Illinois insufficient to confer jurisdiction); see also Larson v. Association of Apartment Owners, 606 F.Supp. 579, 583 (D.Minn.1985) (travel brochures entering Minnesota through unilateral actions of travel agents did not constitute "transacting business" for purposes of Minnesota's long-arm *724 statute). We find these cases persuasive. Timberline's general advertisements, responses to Afton's inquiry about Timberline's summer ski program, and requirements of a deposit, liability policy, and waiver are not contacts that satisfy due process requirements.
(3) Connections between Contacts and Cause of Action. The cause of action must relate to the contacts with the forum state. Valspar, 495 N.W.2d at 411. Timberline argues that its contacts with Minnesota involved general solicitation of business, which is not related to Jenson's tort claim. Jenson argued, and the district court determined, that the liability waivers required by Timberline were related to Jenson's negligence claims, because the waivers will be at issue at trial. We disagree. "Cause of action" is defined as a situation or state of facts that entitle a party to bring an action and to seek judicial relief. Rhodes v. Jones, 351 F.2d 884, 886 (8th Cir.1965), cert. denied, 383 U.S. 919, 86 S.Ct. 914, 15 L.Ed.2d 673 (1966). Under these facts where Jenson's lawsuit is a wrongful death action based on alleged negligence in operating a ski area, the liability waivers do not entitle Jenson to relief. We conclude that there is no connection between the claimed negligence and either the alleged solicitation of business or the requirements of insurance, waivers or deposits.
(4) and (5) Minnesota's Interest in Providing a Forum and the Convenience of the Parties. With regard to these less significant factors, Minnesota's strong interest in allowing injured residents to sue within its borders weighs in favor of finding jurisdiction. Dent Air, 332 N.W.2d at 908. Because witnesses reside in both states, and the accident site is in Oregon, neither state is clearly a more convenient forum.
Because Timberline's contacts with Minnesota are minimal and because the contacts are unrelated to Jenson's cause of action, we conclude that the exercise of personal jurisdiction over Timberline by the State of Minnesota is improper.

DECISION
The district court erred in determining that Minnesota could properly exercise personal jurisdiction over Timberline because Timberline's contacts with Minnesota are not sufficient to satisfy the requirements of constitutional due process.
Reversed.
NOTES
[1] Jenson also alleges that Timberline had contacts with Team Gilboa, another ski racing camp located in Minnesota. The only evidence in the record of this contact is a letter from Team Gilboa to Jenson's attorney with an attached registration form. The district court did not refer to this contact and this evidence does not change our analysis.
[2] The long-arm statute provides that a Minnesota court may exercise jurisdiction over a nonresident defendant if the defendant:

(a) Owns, uses, or possesses any real or personal property situated in this state, or
(b) Transacts any business within the state, or
(c) Commits any act in Minnesota causing injury or property damage, or
(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:
(1) Minnesota has no substantial interest in providing a forum; or
(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice; or
(3) the cause of action lies in defamation or privacy.
Minn.Stat. § 543.19, subd. 1 (1994).