## Ivan BEHM, individually and on behalf of all others similarly situated, Appellant,

v.

## JOHN NUVEEN & CO., INC., et al., Respondents.

### No. C3–96–315.

Court of Appeals of Minnesota.

Oct. 22, 1996.

302 

Samuel D. Heins, Eric L. Olson, Karla M. Gluek, Heins Mills & Olson, P.L.C., Minneapolis, for Appellant.

John D. French, Faegre & Benson, Minneapolis, for Respondents.

Considered and decided by PETERSON, P.J., and HARTEN and FOLEY, JJ.*

## OPINION

HARTEN, Judge.

Shareholder and Illinois resident Ivan Behm appeals dismissal of his class action lawsuit against two Delaware corporations and nine officers and directors who are non-residents of Minnesota. The district court based the dismissal on independent grounds of lack of personal jurisdiction and forum non conveniens. Because we agree with the district court that appellant has not established respondents' minimum jurisdictional contacts with Minnesota and that the Illinois federal district court is the more convenient forum, we affirm.

## FACTS

Appellant shareholder Ivan Behm brought this Rule 23 class action on behalf of himself and all other similarly situated shareholders of the Nuveen Municipal Value Fund, Inc. (NUV Fund). He filed his complaint on July 7, 1995, in Hennepin County District Court, challenging the propriety of a shareholder rights offering by the NUV Fund.[1] Appel-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The NUV Fund is a closed-end investment fund that invests in tax-exempt municipal bonds. Its common shares are traded on the New York Stock Exchange. Unlike an open-ended investment company (mutual fund), which may issue and sell new shares continuously, a closed-end fund does not, as a matter of course, issue new shares. A closed-end company may sell additional shares through a "rights offering," by which it issues rights to existing shareholders. This allows the shareholders to exchange their rights, along with a purchase price, for additional shares in the fund. The offering is completely voluntary—each shareholder chooses whether to participate.

lant alleges that because the offering was made at a price below the shares' fair value, appellant and other nonconsenting shareholders suffered financial injury by the dilution of the net asset value of their shares.

The NUV Fund is a Minnesota corporation with its principal office in Chicago, Illinois. It is not a party to this lawsuit. Appellant named as defendants the following nonresidents:

 (1) *John Nuveen & Co., Inc. (Nuveen):* a multi-million dollar investment banking firm that created the NUV Fund and about 81 other funds. It is a Delaware corporation with its principal place of business in Chicago, Illinois.

 (2) *The Nuveen Advisory Corp. (Adviser):* a wholly-owned subsidiary of Nuveen and registered investment adviser to the NUV Fund and other funds. It is a Delaware corporation with its principal place of business in Chicago, Illinois.

 (3) *R.J. Franke, D.E. Sveen, F.P. Wendt, L.H. Brown, J.E. O'Toole, M.K. Rosenheim, and P.R. Sawers:* directors of the NUV Fund on November 5, 1993, when the contested rights offering was approved. O'Toole is deceased, Wendt is a Connecticut resident; the others are Illinois residents.

 (4) *J.J. Wesolowski and L.W. Martin:* officers of and legal counsel for the NUV Fund. Both are Illinois residents.

In October 1993, Nuveen and Adviser recommended to the NUV Fund's board of directors that it conduct a rights offering. Appellant alleges that the directors simply "rubber stamped" the recommendation; the resulting offering was announced on November 8, 1993, and the value of NUV Fund shares dropped 9.9 percent by January 21, 1994.

Appellant claims that the offering, the directors' approval, and the officers' actions:

 (1) were ultra vires acts violating the NUV Fund's articles of incorporation and Minn.Stat. §§ 302A.161, .251 (director standard of care), .361 (officer standard of care), and .405 (value of shares); and

 (2) breached fiduciary obligations to the NUV Fund and its shareholders.

In short, appellant claims that the respondents approved, promoted, and marketed the shareholder rights offering in 1993 in their own financial interests to increase revenues from management and underwriting fees. He seeks damages and equitable relief against all respondents.

About 1½ years before commencing the instant Minnesota action, appellant's counsel brought a direct action in federal district court in Illinois on behalf of NUV Fund shareholders (that action did not include the specific Minnesota statutory violations alleged in the instant action). The federal court dismissed without prejudice the federal class action with leave to replead it as a derivative action. The plaintiffs have preserved their appeal of that dismissal and have since refiled a derivative action in the federal court on behalf of all NUV Fund shareholders, asserting federal and Minnesota claims. Separate associated actions, one against an Illinois attorney who advised the defendants and one against the two NUV Fund officers and legal counsel who are named in the Minnesota action, were also filed in federal court. The three federal actions are being "coordinated" by the same judge assigned to hear *In re Nuveen Fund Litigation,* No. 94–C–360 (N.D.Ill.). Part of the federal derivative action has been dismissed on substantive grounds, and there is a motion pending to terminate the derivative claims in that action. On March 17, 1995, the parties in the Illinois actions stipulated to a stay of discovery, which was approved by the court on or about March 27.

On September 11, 1995, respondents moved for dismissal of this Minnesota action. They argued that the Minnesota courts lack personal jurisdiction over them, that Minnesota is not a convenient forum, and that the Minnesota case should be stayed at least pending the outcome of the Illinois actions. The district court dismissed the action on the separate grounds of lack of personal jurisdiction and forum non conveniens. This appeal challenges the order dismissing the action and the district court's failure to rule on appellant's pending discovery motion.

## ISSUES

1. Did the district court abuse its discretion by effectively denying record supplementation?

2. Did the district court err in concluding that appellant had not shown the minimum contacts necessary to assert personal jurisdiction over the respondents?

3. Did the district court abuse its discretion by declining jurisdiction on the ground of forum non conveniens?

## ANALYSIS

### 1. Discovery of Jurisdictional Facts

After respondents moved for dismissal, appellant served on respondents requests for documents, notices of deposition, and a subpoena duces tecum. The requests were broad, but contained some specific jurisdictional requests. Respondents objected to the requests on several grounds, including the federal court stay of discovery, and subsequently moved the court for a protective order. Appellant did not move to compel discovery, but two weeks after the hearing on the motion to dismiss, moved for leave to file (under seal) documents from the Illinois action. Appellant's counsel filed an accompanying affidavit and some documents from the Illinois action to establish respondents' contacts with Minnesota. He stated that the documents were subject to a confidentiality order in the Illinois action, but, if disclosed, would show more Minnesota contacts.

■ Jurisdictional discovery generally is permitted before a court rules on a motion to dismiss for lack of personal jurisdiction. *See Domtar, Inc. v. Niagara Fire Ins. Co.*, 533 N.W.2d 25, 29 (Minn.1995) (motion to dismiss expressly denied after parties completed jurisdictional discovery), *cert. denied*, —— U.S. ——, 116 S.Ct. 583, 133 L.Ed.2d 504 (1995). Such discovery is not mandated, however, and is unnecessary where the discovery is unlikely to lead to facts establishing jurisdiction. *See Hanson v. John Blue Co.*, 389 N.W.2d 523, 529 n. 1 (Minn.App.1986) (mo-

tion to dismiss proper even without jurisdictional discovery), *review denied* (Minn. Aug. 13, 1986). *See generally* 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 12.6, at 257 (2d ed.1985). As with other discovery issues, the court has broad discretion in granting jurisdictional discovery. *See* Minn. R. Civ. P. 26.02; *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen*, 454 N.W.2d 916, 921 (Minn.1990).

The district court order did not address the merits of the respondents' motion for a protective order or the appellant's motion to supplement the record. The disposition of the latter is at issue on this appeal. Having granted the dismissal motion, we assume that the district court examined the filed materials and concluded that supplementation of the record would have turned out to be materially unproductive.[2] *See Thompson v. Barnes*, 294 Minn. 528, 536, 200 N.W.2d 921, 927 (1972) (reviewing court limits itself to consideration of issues record shows "were, or had to be, presented and considered by the trial court in deciding the matter before it"); *see also Waters v. Fiebelkorn*, 216 Minn. 489, 495, 13 N.W.2d 461, 464 (1944) ("on appeal error is never presumed"). We agree that appellant's proffered documents neither established nor suggested that record supplementation would have produced proof of the requisite minimum contacts required for personal jurisdiction over respondents. Therefore, we conclude there was no abuse of discretion in the district court's tacit denial of appellant's proposed record supplementation.

### 2. Personal Jurisdiction

■ When personal jurisdiction is challenged, the plaintiff must establish that the defendant purposefully established minimum contacts with the forum state. *See Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). At the pretrial stage, the plaintiff need only make a prima facie showing of sufficient contacts. *Id.* When reviewing an order dismissing for lack of jurisdiction, we accept the plaintiff's

---

2. It is also possible that the district court deemed appellant's motion untimely because it was filed two weeks after the hearing. *See Bolton v. Dep't of Human Serv.* 527 N.W.2d 149, 153–54 (Minn.

App.1995), *rev'd on other grounds,* 540 N.W.2d 523 (Minn.1995) (motion to submit additional evidence made three weeks after hearing was properly denied).

allegations as true. *Hunt v. Nevada State Bank*, 285 Minn. 77, 82–83, 172 N.W.2d 292, 296–97 (1969), *cert. denied*, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970).

Minnesota's long-arm statute, Minn.Stat. § 543.19 (1994),[3] is satisfied if federal due process requirements for personal jurisdiction are met. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992). Minimum contacts may establish "general" or "specific" personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 9, 104 S.Ct. 1868, 1872 n. 8, 9, 80 L.Ed.2d 404 (1984). Specific jurisdiction arises where the defendant's contacts with the forum state are limited—yet connected with the plaintiff's claim—such that the claim arises out of or is related to the defendant's contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). General jurisdiction arises where the defendant's contacts with the forum are "continuous and systematic." *Helicopteros*, 466 U.S. at 415–16, 104 S.Ct. at 1872–73.

### a. Specific Jurisdiction—Nonresident Officers and Directors

Appellant argues that Minnesota courts have personal jurisdiction over the nonresident directors of NUV Fund based on *Oakridge Holdings, Inc. v. Brukman*, 528 N.W.2d 274 (Minn.App.1995), *review denied* (Minn. May 16, 1995).[4] *Brukman* was an action by a Minnesota corporation against three of its nonresident directors and officers. Appellant reads *Brukman* to hold that an individual's voluntary acceptance of a position as an officer or director of a Minnesota corporation is dispositive for assessing personal jurisdiction. On the contrary, we read *Brukman* to preserve the requirement of a minimum contacts analysis under established federal law.

In *Brukman*, we stated that due process requires minimum contacts and that a five-factor test is applied to evaluate those contacts. *Id.* at 276–77. Although we emphasized that the nonresident officers and directors had voluntarily assumed those positions in the Minnesota corporation, we noted that the nonresident officers "*repeatedly communicated* by telephone and facsimile machine with [the corporation's] Minnesota counsel and auditor." *Id.* at 277 (emphasis added). We also concluded that the contacts were "related to" the causes of action, so there was specific jurisdiction. *Id.* Finally, we indicated that because the parties and witnesses were spread out over at least three states, a more convenient forum was not apparent. *Id.* at 277 n. 1.

As the district court and respondents state, *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), is the controlling authority on this issue. *Shaffer* rejected the argument that "positions as directors and officers of a corporation * * * provide sufficient 'contacts, ties, or relations' " for minimum contacts under *International Shoe*. *Id.* at 213–14, 97 S.Ct. at 2584 (footnote omitted) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). In *Shaffer*, the appellants "simply had nothing to do with" the state of incorporation and "had no reason to expect to be haled before" a court of that state. *Id.* at 216, 97 S.Ct. at 2586. Similarly, virtually all conduct here related to the contested rights offering, including evaluation, analysis, approval, and implementation, occurred in Illinois, the state wherein all but one of the individual respondents and all corporate respondents are located.

A state may assert jurisdiction over its corporate officers and directors by statute. *Id.* In response to *Shaffer*, Delaware

---

**3.** Minnesota's long-arm statute, in pertinent part, permits personal jurisdiction over any nonresident individual who "[t]ransacts any business within the state" or "[c]ommits any act outside Minnesota causing injury or property damage in Minnesota." Minn.Stat. § 543.19, subd. 1(b), (d) (1994).

**4.** Appellant also argues that *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (4th Cir.1987), supports personal jurisdiction over respondent officers and directors. As the district court stated, however, the case is not controlling if in conflict with United States Supreme Court precedent.

enacted a jurisdictional statute that placed nonresident directors on notice that they could be haled before Delaware courts. Del. Code Ann. tit. 10, § 3114 (Supp.1994). Such a statute was absent in *Shaffer* and Minnesota has no such statute. Therefore, the nonresident directors and officers cannot fairly be held to have consented to personal jurisdiction in Minnesota courts.

■ We conclude that absent minimum contacts with Minnesota, or a state consent statute, Minnesota courts have no personal jurisdiction over these nonresident officers and directors.

### b. Specific Jurisdiction—Nuveen and Nuveen Advisory

■ Appellant argues that Minnesota has general and specific personal jurisdiction over the corporate respondents because they "repeatedly entered Minnesota in the last decade to incorporate under Minnesota statute 58 separate investment funds, each of which Nuveen and the Nuveen Advisory dominate and control from their Chicago headquarters." To establish specific jurisdiction, appellant must show Nuveen and Nuveen Advisory contacts with Minnesota that related directly to the NUV Fund rights offering—the subject of this lawsuit. Specific jurisdiction may be justified on the basis of a close relationship among the defendants, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872. As clarified in the affidavits, the proposal to have a rights offering and the evaluation, analysis, and approval of the offering all took place in Illinois. Because these acts are at the heart of this litigation, there is no basis for Minnesota to assert specific jurisdiction.

### c. General Jurisdiction

#### (1) Nuveen Advisory

Nuveen Advisory is a Delaware corporation with its principal place of business in Chicago, Illinois. It is not licensed to do business in Minnesota and has neither offices nor employees in Minnesota. It provides contract-based management for the NUV Fund from its Illinois offices.

■ Appellant relies on the corporate respondents' "domination" of the NUV Fund to establish minimum contacts. But the federal Investment Company Act of 1940 regulates the relationship between investment funds and their advisors. *See, e.g.,* 15 U.S.C. §§ 80a–10, –12, –17 (1994). That law permits up to 60 percent of a fund's directors to be affiliated with its advisor. *Id.* § 80a–2(a)(19), –10(a). The district court found that Nuveen Advisory was well within that statutory boundary, with only 29 percent of the Fund's directors being affiliated with Nuveen Advisory. Where the "control" alleged by appellant is less than that expressly permitted by the federal regulating statute, appellant has failed to show the "domination" necessary to support minimum contacts. *See, e.g., Busch v. Mann,* 397 N.W.2d 391, 395–96 (Minn.App.1986) (where facts only established that defendant was subsidiary, there was "[n]o basis for piercing the corporate veil and extending the jurisdictional consequences" of the subsidiary to the parent).

#### (2) Nuveen

■ Over several years, Nuveen incorporated 58 investment funds in Minnesota, including the NUV Fund. Appellant interprets these incorporations as a "pattern of using Minnesota's facilities and laws to sell billions of dollars of shares." General jurisdiction, however, requires Nuveen's contacts with Minnesota to be "continuous and systematic." Nuveen's activities in Minnesota must be substantial and of such a nature that Minnesota should provide jurisdiction even though the cause of action is unrelated to the activities. *See generally* 18 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 8640.10 (perm. ed. rev.vol.1991). Except for the sole act of incorporating the funds, Nuveen has not had contacts with Minnesota. Acting as incorporator of the funds is not continuing and systematic contact with Minnesota. But should the Minnesota Legislature intend to subject incorporators to Minnesota court jurisdiction, it has the power to do so.

This is not a case of a parent incorporating a subsidiary in another state; the NUV Fund's shares are owned by the public. Be-

cause a parent must "dominate" a subsidiary before jurisdiction will be extended to the parent based on the subsidiary's contacts, *see Scott v. Mego Int'l, Inc.*, 519 F.Supp. 1118, 1125–26 (D.Minn.1981), a similar minimal requirement is necessary to extend jurisdiction to a corporation that has simply used another state's laws to incorporate a separate corporation, but otherwise has no connection to the state.

### d. Jurisdictional Conclusion

The district court correctly found that appellant did not meet his burden of establishing the minimum contacts necessary for the Minnesota courts to assert either special or general personal jurisdiction over Nuveen, Nuveen Advisory, or the nonresident officers and directors.

### 3. Forum Non Conveniens

 Dismissal on the basis of the doctrine of forum non conveniens may be appropriate where the exercise of personal jurisdiction "imposes a hardship that does not rise to the level of a due process violation." *Rykoff–Sexton, Inc. v. American Appraisal Assocs.*, 469 N.W.2d 88, 91 (Minn.1991). "The remedy is an equitable one, however, and we review the trial court's determination only for an abuse of discretion." *Id.* (citing *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 45 (Minn.1978), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)).

5. Although the general rule is that the plaintiff's choice of forum should rarely be disturbed, respondents correctly point out that the general rule is for disputes where there are only *two* parties. In *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), the Court stated:

> But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

*Id.* at 524, 67 S.Ct. at 832 (footnote omitted). The presumption is also generally cited in cases in which the plaintiff has chosen his *home* state—a fact *not* present here. *See Independent Sch. Dist. No. 197 v. Accident & Casualty Ins. of*

 The doctrine requires that the district court consider the private interest of the litigant.[5]

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; * * * and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). But the district court must balance this private interest with the public interest in considering administrative difficulties of a particular forum, local interest in the action, and choice of law. *Id.* at 508–09, 67 S.Ct. at 843.

Appellant's primary argument for reversal of the district's court's dismissal based on forum non conveniens is that Minnesota has a particular interest in interpreting its own laws.[6] He cites the Minnesota Business Corporation Act for support, specifically that the directors or shareholders who vote for an issue of shares for a consideration

> unfair to the corporation * * * are * * * *liable to the corporation* for the benefit of the then shareholders who did not consent to and are damaged by the action * * *.

Minn.Stat. § 302A.405, subd. 2 (1994) (emphasis added). He also cites Minn.Stat. § 302A.467 (1994), which provides equitable relief for violations of Minnesota corporate statutes.

*Winterthur*, 525 N.W.2d 600, 605 (Minn.App. 1995) (defendants did not rebut presumption in favor of plaintiffs' choice of forum where five Minnesota school districts and a Connecticut company commenced action in Minnesota involving asbestos contamination of Minnesota school buildings), *review denied* (Minn. Apr. 27, 1995).

6. Appellant also argues that respondents are "whipsawing" him by seeking dismissal of the state claims in both the state and federal actions. When respondents moved to dismiss the state claims in the federal action, their argument was based on a lack of "supplemental" jurisdiction over the state law claims *if* the federal law claims were dismissed. The federal court in large part denied respondents' motion to dismiss, however, leaving intact the state claims and federal jurisdiction over them. Thus, the whipsaw argument lacks merit.

At this time, claims under section .405 are pending in both the instant case and the Illinois federal court actions. By initiating litigation in Illinois, appellant's counsel recognized that courts are capable of interpreting the laws of other jurisdictions. *See, e.g., Hague,* 289 N.W.2d at 49 (holding Minnesota court "capable of interpreting" Wisconsin statute). The fact that no caselaw has developed in Minnesota construing section .405 does not preclude interpretation by the federal court. *See id.* at 49 n. 9 (interpretation would be "clearer" if supreme court had expressly ruled on issue). And, should the federal court choose to defer to Minnesota on an uncertain or unresolved issue of state law, it may certify questions to the Minnesota Supreme Court for resolution. *See* Minn. Stat. § 480.061 (1994); 1 Federal Procedure §§ 1:684–:691 (Law.Coop.1995).

The Illinois federal district court has ruled that equitable relief under section .467 may be granted only by a court in Minnesota. Section .467 provides:

> If a corporation or an officer or director of the corporation violates a provision of this chapter, *a court in this state* may, in an action brought by a shareholder of the corporation, grant any equitable relief it deems just and reasonable in the circumstances and award expenses, including attorneys' fees and disbursements, to the shareholder.

Minn.Stat. § 302A.467 (emphasis added). Appellant argues that this ruling, if coupled with dismissal of this state action, would render section .467 "impotent."

 Whether the relief available in Illinois is "less favorable" to appellant than the relief available in a Minnesota court under section .467, however, is not to be given "'substantial weight in the *forum non conveniens* inquiry.'" *Bergquist v. Medtronic, Inc.,* 379 N.W.2d 508, 512 (Minn.1986) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 250, 102 S.Ct. 252, 263, 70 L.Ed.2d 419 (1981)). Differences in the substantive law of two jurisdictions will enter into a forum non conveniens analysis "only if there is absolutely no effective remedy in the alternative forum." *Id.* Appellant does not argue that there is no remedy in the federal court;

rather, he argues that one particular remedy is unavailable. Damages and equitable relief are available for NUV Fund shareholders under the Investment Company Act of 1940, 15 U.S.C. § 80a–35 (1994), and the Investment Advisers Act of 1940, *id.* § 80b–14. Appellant has not established that the relief he has requested in the federal court is unavailable or illusory. *See De Melo v. Lederle Lab.,* 801 F.2d 1058, 1061 (8th Cir.1986) (Brazil adequate alternative forum even though punitive damages unavailable under Brazilian law).

Other relevant facts indicate that (1) litigation in the Illinois federal court was commenced first, has been ongoing for about 2½ years now, and overlaps this subsequent Minnesota action; (2) there has been and will continue to be duplication of efforts if both actions proceed; and (3) all of the documents, witnesses, parties, and potential parties are located in Illinois.

 Based on these considerations, we conclude that the district court did not abuse its discretion in dismissing the action for forum non conveniens.

## DECISION

The district court did not abuse its discretion by denying appellant's belated discovery motion. The district court neither erred in dismissing the action for lack of personal jurisdiction nor abused its discretion in concluding that Illinois was the more convenient forum.

**Affirmed.**