NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3701-14T3

KELLY MORAN and CAROL MORELLO,

 Plaintiffs-Respondents,

v.

BIOLITEC INC. and BIOMED
TECHNOLOGY HOLDINGS LTD.,

 Defendants,

and

BIOLITEC AG and WOLFGANG
NEUBERGER,

 Defendants-Appellants.
__________________________________

 Argued March 21, 2017 – Decided November 14, 2017

 Before Judges Ostrer, Leone and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Mercer County,
 Docket No. C-000063-09.

 Barry D. Szaferman and Edward Griffith (The
 Griffith Firm) of the New York bar, admitted
 pro hac vice, argued the cause for appellants
 (Szaferman, Lakind, Blumstein & Blader, PC,
 and Mr. Griffith, attorneys; Nathan M.
 Edelstein and Mr. Griffith, on the briefs).
 Peter Reiser (Eiseman Levine Lehrhaupt &
 Kakoyiannis, PC) of the New York bar, admitted
 pro hac vice, argued the cause for respondents
 (Berman Rosenbach, PC, Mr. Reiser and Eric R.
 Levine (Eiseman Levine Lehrhaupt &
 Kakoyiannis, PC) of the New York bar, admitted
 pro hac vice, attorneys; Mr. Rosenbach, Mr.
 Levine and Mr. Reiser, on the brief).

 The opinion of the court was delivered by

OSTRER, J.A.D.

 This case does not belong in New Jersey. Defendants Biolitec

AG, a German corporation, and its CEO and majority owner, Wolfgang

Neuberger, an Austrian, lacked the requisite minimum contacts with

New Jersey to support the trial court's exercise of personal

jurisdiction. Therefore, on defendants' appeal, we reverse the

default judgment that was entered against them after their answer

was stricken for discovery violations.

 I.

 We limit our discussion to the pertinent jurisdictional

facts. Biolitec, Inc. was incorporated in New Jersey in 1989.

The certificate of incorporation designated Carol Morello, then a

New Jersey resident, as its registered agent. The original board

of directors consisted of plaintiffs (who were married),

 2 A-3701-14T3
Neuberger, and a fourth man.1 Plaintiffs listed the same New

Jersey address. Neuberger and the fourth member listed a common

address in West Germany. An attorney was listed as the

incorporator.2 Neuberger was CEO and chairman. Plaintiffs each

had a five percent ownership interest, and Neuberger the remaining

ninety percent. In 2000, Neuberger transferred his ownership

interest to Biolitec AG.

 Although Biolitec, Inc. was initially located in Morello's

New Jersey home, plaintiffs and the company moved to Connecticut

the following year. Since 1995, Biolitec, Inc. has been

headquartered in Massachusetts.

 Besides Biolitec, Inc., Neuberger was affiliated with several

foreign companies, all of which fell under the same corporate

umbrella. Neuberger solely owned Biomed Technology Holdings, Ltd.

(Biomed), a Malaysian-based corporation. Biolitec AG, the German

corporation Neuberger managed, is the parent of several other

foreign companies that manufacture and distribute medical lasers

1
 Although plaintiffs contend before us that Neuberger "made the
decision to incorporate in New Jersey," they cite no record
evidence for that assertion.
2
 According to the certificate of incorporation, the company was
initially named "CeramOptec, Inc."; however, in 2000, the parties
renamed the company "BioLitec, Inc.," to "coincide[] with a
decision to focus the company's business on providing fiber optics
and lasers to the medical market." (We follow both parties'
spelling of that company name without an internal capital "L".)

 3 A-3701-14T3
and fiber optics. Through Neuberger's transfer of his ninety-

percent ownership interest of Biolitec, Inc., that firm became a

subsidiary of Biolitec AG.

 Plaintiffs alleged that between 2000 and 2008, Neuberger and

Biolitec AG "looted" Biolitec, Inc. of over $12,000,000.

Plaintiffs claimed Neuberger and Biolitec AG engaged in several

schemes to divert Biolitec, Inc.'s profits. This included

overcharging Biolitec, Inc. for goods, services, and lasers from

affiliated companies; inflating invoices for overhead charges and

fees; and charging illegitimate interest on inter-company fund

transfers. All these alleged activities occurred while Biolitec,

Inc. was headquartered in Massachusetts.

 Based on these facts, plaintiffs filed a complaint against

defendants in 2009 under the Oppressed Minority Shareholder

statute, N.J.S.A. 14A:12-7, seeking the involuntary dissolution

of Biolitec, Inc. Defendants responded by moving to dismiss the

complaint for lack of personal jurisdiction.

 In support of their motion, Neuberger submitted a

certification stating he was an Austrian citizen, did not reside

in New Jersey, and did not own or lease any property in New Jersey.

He asserted, "At no time have I personally solicited business or

advertised in New Jersey. Moreover, I have not personally

contracted to purchase or supply goods and/or services in New

 4 A-3701-14T3
Jersey." Neuberger added, "Neither Biolitec AG nor any of its

employees have solicited business or advertised in New Jersey.

Similarly, Biolitec AG has not contracted to purchase or supply

goods and/or services in New Jersey." Neither plaintiff submitted

a certification in response to defendants' motion to dismiss. At

oral argument on the motion, defense counsel argued that the record

failed to establish specific jurisdiction over defendants and that

the certificate of incorporation, alone, does not suffice.

 Plaintiffs responded by characterizing defendants' corporate

structure as a "shell game" to avoid personal jurisdiction, noting

that Neuberger had contested personal jurisdiction in a

Massachusetts lawsuit. Plaintiffs argued that by forming a

corporation in New Jersey, Neuberger subjected himself to personal

jurisdiction. Additionally, plaintiffs contended that the trial

court should follow Delaware caselaw, which authorized personal

jurisdiction over nonresident directors or shareholders.

 The trial court denied defendants' motion to dismiss. Citing

Armstrong v. Pomerance, 423 A.2d 174 (Del. 1980), the court found

that both Neuberger and Biolitec AG had sufficient minimum contacts

under International Shoe Co. v. Washington, 326 U.S. 310, 66 S.

Ct. 154, 90 L. Ed. 95 (1945), to exercise specific personal

jurisdiction. Given Neuberger's role as an original board member

of Biolitec, Inc. in New Jersey, and his position as president and

 5 A-3701-14T3
CEO, the court concluded that Neuberger "knowingly availed himself

of the protection of New Jersey law," and "reasonably should expect

to be ha[]led into a New Jersey court . . . ." Conceding the case

for asserting jurisdiction against Biolitec AG was more difficult,

the court found that Biolitec AG subjected itself to New Jersey

jurisdiction when it obtained a controlling interest in a closely

held New Jersey corporation. The court highlighted the fiduciary

duties of shareholders and directors of closely-held

corporations.3

 On appeal, defendants contend the trial court erred in

determining that there were sufficient minimum contacts to

exercise personal jurisdiction.

 II.

 We engage in a two-part review of a trial court's exercise

of jurisdiction, since it involves a "mixed question of law and

fact . . . ." Citibank, N.A. v. Estate of Simpson, 290 N.J. Super.

519, 532 (App. Div. 1996). "We review the court's factual findings

with respect to jurisdiction to determine whether they were

supported by substantial, credible evidence . . . ." Mastondrea

v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App.

Div. 2007) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65

3
 The court found no basis to exercise personal jurisdiction over
BioMed, and dismissed the complaint against it.

 6 A-3701-14T3
N.J. 474, 484 (1974)). "However, whether these facts support the

court's exercise of personal jurisdiction over a defendant is a

question of law, which we review de novo." Patel v. Karnavati

America, LLC, 437 N.J. Super. 415, 423 (App. Div. 2014) (internal

quotation marks and citation omitted).

 As the trial court judge found that general jurisdiction did

not exist, and plaintiffs do not challenge that finding, we limit

our discussion solely to specific jurisdiction. See Waste Mgmt.

v. Admiral Ins. Co., 138 N.J. 106, 119 (1994) (distinguishing

between the two theories of personal jurisdiction, explaining that

"a cause of action [that] arises directly out of a defendant's

contacts with the forum state" is specific and one "based instead

on the defendant's continuous and systematic activities in the

forum" is general), cert. denied, 513 U.S. 1183, 115 S. Ct. 1175,

130 L. Ed. 2d 1128 (1995). In other words, specific jurisdiction

"depends on an 'affiliatio[n] between the forum and the underlying

controversy,' principally, activity or an occurrence that takes

place in the forum State and is therefore subject to the State's

regulation." Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt.,

L.L.C., 450 N.J. Super. 1, 68 (App. Div. 2017) (quoting Goodyear

Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S.

Ct. 2846, 2851, 180 L. Ed. 2d 796, 803 (2011)).

 7 A-3701-14T3
 In conformance with due process, specific jurisdiction over

a non-resident can only be established if the individual has

"certain minimum contacts" with the forum state, "such that the

maintenance of the suit does not offend traditional notions of

fair play and substantial justice." Lebel v. Everglades Marina,

Inc., 115 N.J. 317, 322 (1989) (quoting Int'l Shoe Co., supra, 326

U.S. at 316, 66 S. Ct. at 158, 90 L.Ed. at 102). This minimum

contacts inquiry focuses on "the relationship among the defendant,

the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186,

204, 97 S. Ct. 2569, 2580, 53 L. Ed. 2d 683, 698 (1977). It is

critical to our due process analysis "that there be some act by

which the defendant purposefully avails itself of the privilege

of conducting activities within the forum state, thus invoking the

benefit and protection of its laws." Waste Mgmt., supra, 138 N.J.

at 120 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct.

1228, 1240, 2 L. Ed. 2d 1283, 1298 (1958)). See also Dutch Run-

Mays Draft, LLC v. Wolf Block, LLP, 450 N.J. Super. 590, 599 (App.

Div. 2017) ("Thus, courts examine whether a non-resident defendant

has 'purposefully avail[ed] itself of the privilege of conducting

activities' within the forum, such that the defendant can

reasonabl[y] anticipate being haled into the forum." (quoting

 8 A-3701-14T3
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct.

2174, 2183, 85 L. Ed. 2d 528, 542 (1985))).4

 Once a defendant challenges personal jurisdiction, the

plaintiff bears the burden of demonstrating minimum contacts.

Blakey v. Cont'l Airlines, 164 N.J. 38, 71 (2000). If the

plaintiff succeeds, the defendant bears the burden of showing the

unfairness or unreasonableness of asserting jurisdiction. Waste

Mgmt., supra, 138 N.J. at 124-25. These contacts should be

established "through the use of sworn affidavits, certifications,

or testimony." Jacobs v. Walt Disney World, Co., 309 N.J. Super.

443, 454 (App. Div. 1998).

 The United States Supreme Court's decision in Shaffer, supra

is instructive. In that case, a nonresident shareholder of

Greyhound Corp. – a Delaware corporation with its principal place

of business in Arizona – sued its present and former officers or

directors in Delaware, alleging a breach of their fiduciary duties.

4
 We recognize, but need not resolve, the debate over the
significance of a defendant's mere "expectations" in the personal
jurisdiction analysis. As a plurality of the United States Supreme
Court noted, reversing a decision of our Supreme Court, "[I]t is
the defendant's actions, not his expectations, that empower a
State's courts to subject him to judgment." J. McIntyre Mach.,
Ltd. v. Nicastro, 564 U.S. 873, 883, 131 S. Ct. 2780, 2789, 180
L. Ed. 2d 765, 776 (2011) (Nicastro), reversing Nicastro v. J.
McIntyre Mach., Ltd., 201 N.J. 48 (2010). See Patel v. Karnavati
Am., LLC, 437 N.J. Super. 415, 425-29 (App. Div. 2014) (discussing
Nicastro).

 9 A-3701-14T3
433 U.S. at 189-190, 97 S. Ct. at 2572, 53 L. Ed. 2d at 688-89.

The plaintiff never alleged that any of the defendants ever set

foot in Delaware, or that any act related to his lawsuit took

place there. Id. at 213, 97 S. Ct. at 2584, 53 L. Ed. 2d at 703.

Instead, he presented two different theories for establishing

personal jurisdiction over the defendants. First, relying on a

state statute that treated stock in Delaware as being physically

present in the state, he argued that Delaware had quasi in rem

jurisdiction over the defendants since they all owned stock in a

Delaware corporation. Id. at 191-94, 97 S. Ct. at 2573-75, 53 L.

Ed. 2d 689-92. Second, the plaintiff argued that the defendants'

positions as directors or officers of a Delaware corporation

provided sufficient minimum contacts with the state for it to

exercise personal jurisdiction. Id. at 213-14, 97 S. Ct. at 2584-

85, 53 L. Ed. 2d at 703-04.

 The Supreme Court rejected both theories. As for the

plaintiff's quasi in rem argument, the Supreme Court concluded

that the stock ownership, alone, did not establish personal

jurisdiction:

 [T]hat property is not the subject matter of
 this litigation, nor is the underlying cause
 of action related to the property. [The
 defendants'] holdings in Greyhound do not,
 therefore, provide contacts with Delaware
 sufficient to support the jurisdiction of that
 State's courts over [the defendants].

 10 A-3701-14T3
 [Id. at 213, 97 S. Ct. at 2584, 53 L. Ed. 2d
 at 703.]

Similarly, the plaintiff's second argument failed as the

defendants' positions within the corporation fell short of

establishing sufficient minimum contacts:

 [This argument] does not demonstrate that
 appellants have "purposefully avail[ed
 themselves] of the privilege of conducting
 activities within the forum State," in a way
 that would justify bringing them before a
 Delaware tribunal. [The defendants] have
 simply had nothing to do with the State of
 Delaware. Moreover, [the defendants] had no
 reason to expect to be haled before a Delaware
 court.

 [Id. at 216, 97 S. Ct. at 2586, 53 L. Ed. 2d
 at 705 (quoting Hanson, 357 U.S. at 253, 78
 S. Ct. at 1240, 2 L. Ed. 2d at 1298).]

 Guided by the Supreme Court's decision in Shaffer, we conclude

the trial court erred in exercising personal jurisdiction over

defendants. It is undisputed that defendants have never resided

in New Jersey; and neither Neuberger personally, nor Biolitec AG

engaged in business here. Biolitec, Inc. left New Jersey in 1990.

Moreover, plaintiffs do not contend that any of the alleged

"looting" schemes, which gave rise to their cause of action, took

place in New Jersey.

 Neuberger's role as an original member of the board in 1989

is an insufficient basis for jurisdiction, as plaintiffs' claims

do not arise from, or relate to the incorporation itself. Cf.

 11 A-3701-14T3
Sears, Roebuck & Co. v. Sears, 744 F. Supp. 1297, 1303 (D. Del.

1990) (finding that a corporation's formation of a subsidiary in

the forum state constituted "an act sufficient to confer personal

jurisdiction over it for causes of action related to that act of

incorporation") (emphasis added).

 Similarly, Biolitec AG's ownership interest in Biolitec,

Inc., without more, fails to establish personal jurisdiction. See

Shaffer, supra, 433 U.S. at 213-15, 97 S. Ct. at 2584-86, 53 L.

Ed. 2d at 703-05; Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905

(1st Cir. 1980) (stating that jurisdiction over a subsidiary "does

not confer jurisdiction over its nonresident parent, even if the

parent is sole owner of the subsidiary"); cf. Pfundstein v. Omnicom

Group, Inc., 285 N.J. Super. 245, 254 (App. Div. 1995) (applying

general jurisdiction analysis and declining to impute actions of

subsidiary to corporate parent). Simply put, defendants lack the

required minimum contacts to justify haling them into court here.

 We also part company with the trial court's reliance on

Armstrong, supra, and Delaware law. In Armstrong, the Delaware

Supreme Court affirmed the trial court's exercise of personal

jurisdiction over nonresident directors of a Delaware corporation.

423 A.2d at 175-76, 179. The corporation did the minimum business

necessary to maintain its status as a Delaware corporation, and

none of the directors had any connection with the state besides

 12 A-3701-14T3
their positions within the corporation. Id. at 175. However,

relying on 10 Del. Code Ann. § 3114,5 the court explained "[t]he

defendants accepted their directorships with explicit statutory

notice, via § 3114, that they could be haled into the Delaware

Courts to answer for alleged breaches of the duties imposed on

them by the very laws which empowered them to act in their

corporate capacities." Id. at 176. Finding § 3114 constitutional,

the court concluded that the statute was sufficient to confer

jurisdiction over the nonresident directors.6

 However, New Jersey has no analog to § 3114 that would

establish personal jurisdiction over either Neuberger or Biolitec

AG. Plaintiffs suggest that the omission is "immaterial," because

our courts exercise personal jurisdiction to the fullest extent

the Constitution permits. See Avdel Corp. v. Mecure, 58 N.J. 264,

268 (1971). We disagree. The basis for jurisdiction in Armstrong

was not the Constitution; it was the adoption of a statute that

5
 10 Del. Code Ann. § 3114 provides that any nonresident who accepts
a directorship position with a Delaware corporation "consent[s]
to jurisdiction in suits relating to the defendant's capacity as
director." Id. at 175.
6
 In reconciling its holding with Shaffer, the court explained,
"[t]he only substantive difference for present purposes between
Shaffer and the instant case is the existence of § 3114 as the
basis of jurisdiction; we think that is sufficient to render the
assertion of in personam jurisdiction constitutional in this
case." Id. at 180.

 13 A-3701-14T3
established consent to be sued in the forum state notwithstanding

constitutional limits outlined in Shaffer. Other courts have

relied on the absence of such a "consent-to-be-sued" statute and

found personal jurisdiction lacking in lawsuits against officers

and directors whose only contact with the forum state was their

position with a corporation incorporated there. See American

Freedom Train Found. v. Spurney, 747 F.2d 1069, 1074 (1st Cir.

1984) (comparing law of Massachusetts with that of Delaware and

Connecticut); Behm v. John Nuveen & Co., 555 N.W.2d 301, 306-07

(Minn. Ct. App. 1996) (comparing Minnesota and Delaware law). We

likewise find Armstrong distinguishable, based on the absence in

New Jersey of a statute like Delaware's.7

 Finally, we briefly distinguish Pittsburgh Terminal Corp. v.

Mid Allegheny Corp., 831 F.2d 522 (4th Cir. 1987) and Springs

Industries, Inc. v. Gasson, 923 F. Supp. 823 (D.S.C. 1996), upon

which plaintiffs rely. In Pittsburgh Terminal Corp., the plaintiff

initiated a stockholder derivative action against nonresident

directors of a West Virginia corporation in a West Virginia court.

831 F.2d at 524. Although nonresidents, the Fourth Circuit noted

7
 We also note that questions have been raised about the Delaware
statute's constitutionality. See Eric A. Chiappinelli, The Myth
of Director Consent: After Shaffer, Beyond Nicastro, 37 Del. J.
Corp. L. 783, 818 (2013) ("Nicastro leaves no doubt that Delaware
violates the Constitution when it asserts personal jurisdiction
over fiduciaries under Section 3114.").

 14 A-3701-14T3
the degree of contacts the directors had with the state, id. at

524, and found it significant that the corporation conducted

business exclusively in West Virginia. Id. at 528 ("Unlike

Schaffer, this is not a case where the corporation is a phantom

resident of the chartering State."). Similarly, in Springs

Industries, the plaintiff filed fraud and civil conspiracy claims

in South Carolina against a nonresident director of South Carolina

corporations. 923 F. Supp. at 824-25. Although the director's

tortious acts took place out of state, because the act was causally

related to the plaintiff's injury within South Carolina, the court

found that there were sufficient grounds for it to exercise

personal jurisdiction. Id. at 827.

 Here, however, defendants have no identifiable contacts with

New Jersey and, more importantly, Biolitec, Inc. has not done

business in the state in over twenty-five years. Additionally,

none of the alleged injuries sustained took place in New Jersey.

Since defendants lacked the minimum requisite contacts, the trial

court's exercise of personal jurisdiction was not warranted.

 Reversed. We do not retain jurisdiction.

 15 A-3701-14T3